IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **ANGEL MICHELLE JONES,** | ) | |
| **#309213,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:20-CV-991-RAH-CSC** |
| | ) | **(WO)** |
| | ) | |
| **ALABAMA DEPARTMENT** | ) | |
| **OF CORRECTIONS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended

filed on November 20, 2020, by Angel Michelle Jones, an indigent state inmate, challenging

actions which occurred at Tutwiler Prison for Women.  (Doc. 13 at p. 3).  She alleges that on

August 20, 2020, Lt. Rose Snow used excessive force against her, and that Commissioner Dr.

Wendy Williams and Warden Deidra Wright violated her Eighth and Fourteenth Amendment

rights by failing to terminate Snow's employment. She also names as a Defendant the Alabama

Department of Corrections.[2]   She does not state whether she sues the Defendants in their

---

[1] All documents and attendant page numbers cited herein are those assigned by the clerk of this court in the docketing process.

[2] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).  This screening procedure requires the court to dismiss a prisoner's civil action if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii). The Alabama Department of Corrections is not subject to suit or liability under § 1983.  Indeed, the Eleventh Amendment bars suit directly against a state or its agencies regardless of the relief sought.  *Pennhurst State School & Hosp. v. Halderman,* 465 U.S.

individual or official capacities.  She seeks monetary damages and Defendant Snow's removal from Tutwiler. (Doc. 13 at p. 8).

The Defendants filed a special report (Doc. 23, Exs. 1-21), which included relevant evidentiary materials in support, specifically affidavits, prison documents and medical records, addressing the claims presented by Jones.  In these documents Defendant Snow denies that she used excessive force against Plaintiff, and Defendants Williams and Wright deny that they violated Plaintiff's constitutional rights in any manner.  Defendants also filed a DVD recording of the August 20, 2020, incident.  (Doc. 34).

After reviewing the special report and exhibits, the court issued an order on June 14, 2021, requiring Snow to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 26 at p. 3). (Emphasis added).  Snow filed a response to this order.  (Doc. 27).  Pursuant to the directives of the order entered on June 14, 2020, the court now treats the Defendants' special

89 (1984).  Thus, Snow's claims against the ADOC are due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

report as a motion for summary judgment and concludes that summary judgment is due to be granted on all Plaintiff's claims as further set out herein.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in her favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Jones' pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Jones has failed to demonstrate a genuine issue of fact on her excessive force claim against Defendant Lt. Snow and has failed to demonstrate a genuine issue of fact based on claims for her supervisory liability against Commissioner Williams and Warden Wright. Furthermore, to the extent Jones attempts to state claims against Defendants Williams and Wright for failure to protect and failure to investigate, those claims also fail. Thus, the court concludes that summary judgment is due to be granted in favor of all Defendants on each of Plaintiff's claims as discussed more fully below.

4

## III.  FACTS

In her Amended Complaint, Plaintiff claims that on August 20, 2020, while housed at Tutwiler, Defendant Lt. Snow used excessive force against her.  Specifically, she states that she and Defendant Snow "got into an argument after I told her I was having a crisis."  (Doc. 13 at p. 5).  She claims Lt. Snow cursed her, raised her voice to her, threatened her and "got right in my face."  *Id*.  Next, Defendant Snow told Sgt. Reese, who is not a Defendant, to handcuff Plaintiff and Plaintiff claims that once she was cuffed "Lt. Snow was right behind me and she immediately yanked my wrists backwards and squeezed the handcuffs as tight as they would go."  Plaintiff claims that she screamed and cried for help because Lt. Snow was hurting her. (Doc. 13 at pp. 5-6).

Next, Plaintiff states that Lt. Snow told Sgt. Reese to put her on the ground, "when he did, it was face first on the pavement.  Then Lt. Snow jumped on my back, put her knees in my back and put her hands on my head, so the left side of my face was smashed on the pavement." (Doc. 13 at p. 6).  She claims Sgt. Reese told Lt. Snow to stop, but she did not and Plaintiff "continued screaming the entire time this incident occurred due to the severe pain and trauma that Lt. Snow caused me when she brutally assaulted me on 8/20/2020."  *Id*.   After a time, Captain Coleman arrived on the scene, and helped Plaintiff off the ground, took Plaintiff to have pictures taken and to the medical unit for a body chart.  *Id*.   Plaintiff claims that she was in pain for two weeks and was prescribed Robaxin.  *Id*.  She further claims that after this incident, Lt. Snow falsely accused Plaintiff of kicking her in the leg, and she was wrongly charged with this offense.  *Id.*

The Defendants filed a DVD containing video evidence of this incident, some of which is clear and some distorted and which lasts a total of about seven minutes.  (Doc. 34). The court has carefully reviewed the video evidence, which lacks audio, and begins when Plaintiff is already in handcuffs on the ground.  The video demonstrates Plaintiff lying on her side facing a male guard, Sgt. Reese, and a female guard, Lt. Snow, is on the other side squatting and leaning into Plaintiff's back and shoulders, with what appears to be most of her body weight.  Lt. Snow is slight in stature and demonstrably smaller than Plaintiff in weight.  During this time, neither Lt. Snow nor Sgt. Reese ever forced Plaintiff's head or face into the concrete.

After about one minute in this position, Lt Snow stands and Sgt. Reese attempts to raise Plaintiff to her feet, but she refuses.  Lt. Snow then stands to the side of Plaintiff by her head while Sgt Reese straddles Plaintiff's legs.  Neither touches Plaintiff while she remains on the ground.  Thereafter, Lt. Snow radios for assistance and in less than four minutes a male and female guard arrive and help Plaintiff to a sitting position.  After Plaintiff is seated, Lt. Snow exits first, followed by Sgt. Reese.  The two new guards remain with Plaintiff and assist her to her feet.  Plaintiff walks away with them without further incident.  While Plaintiff appears to be upset, she also appears to communicate with Lt. Snow and Sgt Reese, and the two later arriving officers.  At no time did Plaintiff appear to be in extreme distress.  (Doc. 34).  The affidavits of the correctional officers, including Defendant Snow, confirm the video evidence.  (Docs. 23-1, 23-10, 23-11).

## IV.  DISCUSSION

### A. OFFICIAL CAPACITY CLAIMS

To the extent Jones requests monetary damages from the Defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753

(11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).   Thus, the court will now address the Plaintiff's claims brought against Defendants in their individual capacities.

## B.  CLAIMS FOR DELIBERATE INDIFFERENCE

    **1.  <u>Standard of Review.</u>**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions."  *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).   Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."

*Farmer*, 511 U.S. at 834.  "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted).   The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same).   "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 837.  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well-settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation.  *Caldwell*, 748 F.3d at 1099.  With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an

9

objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.* Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk. *Farmer*, 511 U.S. at 837.

The court will now turn its attention to the Plaintiff's claims of deliberate indifference. For the following reasons, the court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact exists as to whether the force used by Defendant Snow against her on August 20, 2010, was applied "maliciously or sadistically". *Whitley v. Albers*, 475 U.S. 312 at 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The court further concludes that summary judgment is due to be granted on the Plaintiff's deliberate indifference claims premised upon her allegations of excessive force against Defendant Snow. Additionally, the court concludes, to the

11

extent Plaintiff seeks to state a failure to protect claim against Defendants Williams and Wright, that claim also fails.

### 2. **Excessive Force**

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. "Injury and force . .

. are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018).  In *Miles,* the court identified the five factors relevant in determining whether force was

applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and  "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 320-21.

The video begins with Plaintiff lying handcuffed on the ground.  The duration of the video depicts no force being used against Plaintiff by Defendant Lt. Snow or any other correctional officer.  However, because the video does not show what occurred prior to Plaintiff being handcuffed and put on the ground, the court must accept the Plaintiff's version of facts as true for the events leading up to this point.

Indeed, Plaintiff claims that once she was handcuffed "Lt. Snow was right behind me and she immediately yanked my wrists backwards and squeezed the handcuffs as tight as they would go."  Plaintiff claims that she screamed and cried for help because Lt. Snow was hurting her. (Doc. 13 at pp. 5-6). Next, she states that Lt. Snow told Sgt. Reese to put her on the ground, "when he did, it was face first on the pavement.  Then Lt. Snow jumped on my back, put her knees in my back and put her hands on my head, so the left side of my face was smashed on the pavement."  (Doc. 13 at p. 6).  She claims Sgt. Reese told Lt. Snow to stop, but she did not and Plaintiff "continued screaming the entire time this incident occurred due to the severe pain and trauma that Lt. Snow caused."  *Id.*  Even so, the court concludes that Plaintiff fails to create a fact question as to whether the force applied by Defendant Lt. Snow was applied "maliciously or sadistically".  *Whitley,* 475 U.S. at 320-21.

First, Plaintiff admits that she argued with Lt. Snow who was handling Plaintiff's claims of a personal crisis.   Likewise, Plaintiff does not dispute that she refused to comply with Lt. Snow's orders for her to calm down. (Doc. 13 at p. 5 and Doc. 23-3 at p. 1).   Thus, the first *Miles* factor weighs against Plaintiff because her refusal to follow an order required application of some force.

Next, the court must focus on the amount of force used by Lt. Snow and whether it was reasonable under the circumstances.   Lt. Snow testified that Plaintiff said she was going to "get the horseshoe", and that she instructed Sgt. Reese to handcuff Plaintiff to keep her from picking up the horseshoe.   (Doc. 23-3 at p. 1).   Plaintiff does not dispute this statement; indeed, she admits that while Snow was yelling "profanities" at her, she "kept walking away from her toward the Annex Yard." (Doc. 13 at p. 5).   Moreover, Sgt Reese confirms that Plaintiff was walking toward the horseshoe pit, while yelling at Lt. Snow.   (Doc. 23-10 at p.1).   Sgt. Reese also testifies that Plaintiff only allowed herself to be cuffed after two direct orders from him and that once she was cuffed Plaintiff attempted to pull away from him and Lt. Snow stepped in to assist him.  *Id.*  Furthermore, Lt. Snow and Sgt. Reese testify that Plaintiff repeatedly kicked Lt. Snow in the leg; after which they placed Plaintiff on the ground using the transport take down to the front. (Docs. 23-3 at p. 1 and 23-3 at p.1).   Although Plaintiff denies that she "intentionally" kicked Lt. Snow, and states generally that she did not resist, she does not specifically dispute the officers' testimony of events leading up to her being handcuffed.   (Doc. 13 at pp. 5-6).   Furthermore, she admits that after she was handcuffed she continued "screaming and crying" because of the pain caused by the cuffs and Lt. Snow's assault on her.  *Id.*  Thus, the court

concludes that Plaintiff's continued resistance and the threat of possible self-harm and harm to others justified the use of force by the officers.   Therefore, the court concludes that the *Miles* second, third and fourth factors likewise weigh against Plaintiff.

*Miles* also requires consideration by the court about the extent of the injury suffered by the Plaintiff. 757 F. App'x at 829.   Here, Plaintiff alleges that she was in pain for two weeks following the incident and that she was prescribed Robaxin by a nurse at Tutwiler Healthcare. (Doc. 13 at p. 6).   Plaintiff's body chart created at 1:25 p.m. on the day of the incident demonstrates "handcuff indentation with redness" and "redness" to other parts of her body.   No other injuries are noted.  (Doc. 23-8 at p. 1).  Thus, the court concludes that the final *Miles* factor also weighs against Plaintiff as there is no evidence of a "serious injury".  *Miles,* 757 F. App'x at 830 (No "serious injury" where the only treatment was Tylenol).   Accordingly, the court concludes that summary judgment is due to be granted on Plaintiff's excessive force claim against Defendant Snow.

### 3. <u>Failure to Protect</u>.

Reading the Plaintiff's Amended Complaint liberally as this court is required to do, Plaintiff raises a failure to protect claim against Defendants ADOC Deputy Commissioner Wendy Williams and Warden Deidra Wright   To survive the properly supported motion for summary judgment filed by the Defendants, Jones must first demonstrate an objectively substantial risk of serious harm existed to her and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100.  If she establishes these

16

objective elements, Jones must then satisfy the subjective component.  This requires Jones to show "that defendants subjectively knew that [she] faced a substantial risk of serious harm.  The defendants must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).  Based upon the court's careful review of all the evidence, the court concludes that the Plaintiff fails to even allege, much less offer any proof, that Defendants Williams and Wright were aware she was at risk for suffering an assault from Lt. Snow.  Accordingly, summary judgment is due to be granted on this claim.

## C.    FAILURE TO INVESTIGATE

Reading the Plaintiff's Amended Complaint liberally as this court is required to do, Plaintiff raises a failure to investigate claim against Defendants ADOC Deputy Commissioner Wendy Williams and Warden Deidra Wright.  Specifically, she claims that these Defendants wrongfully maintained Lt. Snow's employment following her assault on Plaintiff and the false statements she made against Plaintiff in the Disciplinary Report.  (Doc. 13 at pp. 2-7).   She

claims this failure violated her rights under the Eighth Amendment and Fourteenth Amendments. Defendant Warden Wright, however, denies violating Plaintiff's constitutional rights and states that "inmate Jones' Disciplinary Hearing was completed in accordance with ADOC Policies and Procedures." (Doc. 23-21 at p.1). Also, Defendant Deputy Commissioner Williams testified that she is not responsible for the day-to-day operations of Tutwiler Prison and disavowed knowledge of Plaintiff's allegations. (Doc. 23-20 at p.1)

The law is clear; Plaintiff's claim does not amount to an Eighth Amendment violation as the "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir.2000); *Losey v. Warden*, 521 F. App'x 717, 719-720 (11th Cir. 2013) (holding prisoner's allegation that two correctional officers failed to follow procedures regarding official count of inmates and thereby failed to protect him from rape by fellow inmate did not rise to the level of deliberate indifference and instead was at most only a form of negligence); *see also Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (explaining that "the protections of the Constitution . . . are just not triggered by lack of due care by prison officials."); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (finding that a violation of the Eighth Amendment "must involve "more than ordinary lack of due care for the prisoner's . . . .safety").

Likewise, to the extent that Plaintiff attempts to state a claim under the Fourteenth Amendment, the Court concludes this claim must fail because "inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F. Supp.3d, 394, 414 (N.D. N.Y. 2014); *see also Torres v. Mazzuca*, 246 F. Supp.2d 334, 342

(S.D. N.Y. 2003) (prisoners have no due process right to an investigation of grievances). "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 196 (1989). While § 1983 "provides a mechanism for enforcing a right or benefit established elsewhere," it does not in and of itself create a federal right or benefit. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Accordingly, Plaintiff's allegations regarding Defendants Williams and Wright's failure to investigate or follow procedures regarding her report of excessive force do not state a plausible claim for relief under the Eighth or Fourteenth Amendments and are therefore due to be dismissed.

### D. RESPONDEAT SUPERIOR

To the extent Jones alleges that Defendants Warden Wright and Commissioner Williams are liable to her in their supervisory positions for the actions or omissions of their subordinates based on a theory of respondeat superior, that claim must fail. The law is well established that supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability. *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of respondeat superior [or vicarious liability] … . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

19

*Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *see also Cottone,* 326 F.3d at 1360 (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability").

Thus, liability could attach to Defendants only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone,* 326 F.3d at 1360; *see also Iqbal,* 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Based upon the court's careful review of the record, it is clear that neither participated or had direct involvement in the underlying events. Indeed, Defendant ADOC Deputy Commissioner Wendy Williams testified that she was not responsible for the day-to-day operations of Tutwiler and did not have personal knowledge of the allegations made by Plaintiff.  (Doc. 23-20).  Likewise, while Defendant Warden Wright admits that she was made aware of Plaintiff's alleged assault following the incident, she states that Plaintiff's "Disciplinary Hearing was completed in accordance with ADOC Policies and Procedures." (Doc. 23-21).

To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew

that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone,* 326 F.3d at 1360 (internal punctuation and citations omitted). After careful review of the pleadings and evidentiary materials, the court concludes that Jones fails to present any such evidence. Therefore, summary judgment is due to be granted in the Defendants' favor on any claims asserting respondeat superior or vicarious liability.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Alabama Department of Corrections be DISMISSED as a party to this action pursuant to 28 U.S.C. §1915(e)(2)(B)(i);

2. The Defendants' motion for summary judgment (Doc. 23) be GRANTED on each of Plaintiff's claims;

3. Judgment be entered in favor of the Defendants;

4. This action be DISMISSED with prejudice;

5. No costs be taxed.

On or before **March 21, 2024**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on

unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

     DONE this 6th day of March, 2024

               /s/  Charles S. Coody
               UNITED STATES MAGISTRATE JUDGE